**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
Tel.: (212) 465-1188
Email: cklee@leelitigation.com
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

JOSE NOEL OSORIO, *on behalf of himself,*
*FLSA Collective Plaintiffs, and the Class,*

Plaintiff,

3 PINUPS INC.
d/b/a AMERICAN BEAUTY BISTRO,
LI CC HOSPITALITY LLC
d/b/a AMERICAN BEAUTY IN THE PARK,
JEN MARDEN INC.
f/d/b/a AMERICAN BEAUTY BAR AND GRILL
MICHAEL CASSANO, and
MARIA CASSANO,

Defendants,

**Case No:**

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Jury Trial Demanded

Plaintiff JOSE NOEL OSORIO, on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Complaint against Defendants 3 PINUPS INC. d/b/a AMERICAN BEAUTY BISTRO, LI CC HOSPITALITY LLC d/b/a AMERICAN BEAUTY IN THE PARK, and JEN MARDEN INC. f/d/b/a AMERICAN BEAUTY BAR AND GRILL ("Corporate Defendants"), MICHAEL CASSANO, and MARIA CASSANO (collectively, "Individual Defendants," and, together with Corporate Defendants, "Defendants"), and states as follows:

## INTRODUCTION

1. Plaintiff alleges that, pursuant to the Fair Labor Standards Act ("FLSA"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid minimum wages; (2) unpaid overtime premiums; (3) liquidated damages; and (4) attorneys' fees and costs.

2. Plaintiff alleges that, pursuant to the New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid minimum wages; (2) unpaid overtime premiums, (3) unpaid wages, due to Defendants' failure to pay Plaintiff for his last week of employment; (4) unpaid spread of hours premiums; (5) compensation for late payment of wages; (6) statutory penalties; (7) liquidated damages; and (8) attorneys' fees and costs.

3. Plaintiff further alleges that pursuant to the Internal Revenue Code, 26 U.S.C. § 7434 ("IRC"), he and others similarly situated are entitled to damages and fees and costs in this matter because Defendants willfully filed fraudulent tax information forms with the Internal Revenue Service ("IRS").

4. Plaintiff further alleges that Defendants breached their contract with Plaintiff and Class Members by failing to pay employer payroll taxes for Plaintiff and Class Members, as required by the Federal Insurance Contribution Act ("FICA"). Plaintiff also alleges that, in retaining those sums for themselves, Defendants unjustly enriched themselves at the expense of Plaintiff and Class Members.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

6. Venue is proper in the Eastern District pursuant to 28 U.S.C. §1391.

7. The IRS will be notified of this Complaint as the Internal Revenue Code requires. Specifically, the Internal Revenue Code provides that "[a]ny person bringing an action under [26 U.S.C. § 7434] Subsection (a) shall provide a copy of the complaint to the IRS upon the filing of such complaint with the court." 26 U.S.C. § 7434(d).

**PARTIES**

8. For all relevant time periods, Plaintiff was a resident of Mount Vernon, New York.

9. Defendants collectively own and operate a restaurant enterprise known as "American Beauty," which features American cuisine. Defendants' enterprise has venues at the following locations:

a. American Beauty Bistro, located at 24 Central Ave Massapequa, New York 11758, operated through Corporate Defendant 3 PINUPS INC;

b. American Beauty in the Park, located at 1026A Park Blvd Massapequa Park, New York 11762, operated through Corporate Defendant LI CC HOSPITALITY LLC; and

c. Closed as of August 2025, American Beauty Bar and Grill, located at 2562 Sunrise Hwy, Bellmore, New York 11710, operated through Corporate Defendant JEN MARDEN INC.

(Collectively, "the Restaurants").

10. Corporate Defendant 3 PINUPS INC. d/b/a AMERICAN BEAUTY BISTRO is a domestic business corporation organized under the laws of the State of New York with an

address for service of process at 220 Old Country Road, First Floor, Mineola, NY 11501 and a principal place of business located at 24 Central Ave, Massapequa, NY 11758.

11. Corporate Defendant LI CC HOSPITALITY LLC d/b/a AMERICAN BEAUTY IN THE PARK is a limited liability company organized under the laws of the State of New York with an address for service of process at 1100 Franklin Ave., Suite 305, Garden City, NY 11530 and a principal place of business located at 1026A Park Blvd, Massapequa Park, NY 11762.

12. Corporate Defendant JEN MARDEN INC. f/d/b/a AMERICAN BEAUTY BAR AND GRILL is a domestic business corporation organized under the laws of the State of New York with an address of service of process at 220 Old Country Road, First Floor, Mineola, NY 11501 and a principal place of business located at 2562 Sunrise Hwy, Bellmore, NY 11710.

13. Individual Defendant MICHAEL CASSANO is the owner of all Corporate Defendants. Defendant MICHAEL CASSANO exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. Defendant MICHAEL CASSANO frequently visits the Restaurants. Defendant exercises—and also delegates to managers and supervisors—the power to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee schedules, and (iv) otherwise affect the quality of employment, including those of Plaintiff, FLSA Collective Plaintiffs, and the Class. At all relevant times, employees of the Restaurants could complain to Defendant MICHAEL CASSANO directly regarding any of the terms of their employment, and Defendant MICHAEL CASSANO would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. Defendant MICHAEL CASSANO had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class Members, and could reprimand employees.

14. Individual Defendant MARIA CASSANO is the owner of all Corporate Defendants. Defendant MARIA CASSANO exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. Defendant MARIA CASSANO frequently visits the Restaurants. Defendant exercises—and also delegates to managers and supervisors—the power to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee schedules, and (iv) otherwise affect the quality of employment, including those of Plaintiff, FLSA Collective Plaintiffs, and the Class. At all relevant times, employees of the Restaurants could complain to Defendant MARIA CASSANO directly regarding any of the terms of their employment, and Defendant MARIA CASSANO would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating, or hiring such employees. Defendant MARIA CASSANO had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class Members and could reprimand employees.

15. The Restaurants are operated by Defendants as a single integrated enterprise. The Restaurants are commonly owned, operated, controlled, and managed by Individual Defendants, who are the founder and principal of all Restaurants' operating entities and have the power to make binding decisions for the entities.

16. The Restaurants are engaged in related activities, share common ownership, and have a common business purpose:

a) All Restaurants are owned and operated collectively by Defendants as a single integrated business. Specifically, Individual Defendants own and manage all the

Restaurants[1]. *See* **Exhibit A**.

b) American Beauty Bistro and American Beauty in the Park are advertised together on a single shared website under the common "American Beauty Restaurants" name and logo. The website:

i. presents both locations under the shared American Beauty name and branding, labeling them "American Beauty Presents The Bistro" and "American Beauty Presents The Restaurant";

ii. contains links to each location's own website and social media pages; and

iii. displays a single shared gallery of photographs of food.

*See* **Exhibit B**.

c) A local news publication, Greater Long Island, described the Restaurants as "sister restaurants." *See* **Exhibit C**.

d) The Restaurants have the same holiday hours of operation, the same pet-friendly dining policy, and jointly provide catering services, further demonstrating their common operation and integration as a single enterprise. *See* **Exhibit D.**

e) Defendants interchanged employees and supplies among all Restaurants. Throughout Plaintiff's employment, he worked across all Restaurants as a cook. Other employees, including Edwin [LNU], Manuel [LNU], Cristiana [LNU], Alex [LNU], Gloria [LNU], Justin [LNU], and Kitchen Managers Francisco [LNU] and

---

[1] Upon information and belief, Maria Cassano and Maria Pallotta are the same person. "Maria Pallotta" was her name before her marriage to Michael Cassano. *See* Ex. A at 2, 4–5 (identifying "Michael Cassano and Maria Pallotta" as the owners of American Beauty Bistro and describing them as a "local couple"); *id.* at 9 (identifying "American Beauty Owner Maria Cassano" and "Mike and Maria Cassano" as the owners).

Andrew [LNU], were required to work across all Restaurants. The employees were also asked to transfer supplies among the Restaurants, further demonstrating the interrelation of the Restaurants' operations.

f) A recent Facebook post by Individual Defendant Maria Cassano advertised a bartender position offering an "opportunity to work between two successful restaurants," specifically Defendants' American Beauty Bistro and American Beauty In The Park, indicating that the Restaurants shared a centralized hiring process and employees across all locations. *See* **Exhibit E**.

g) Throughout Plaintiff's employment, he worked across all Restaurants and had received wage statements issued by each of the Corporate Defendants. Even during weeks in which Plaintiff worked at only one location, he nevertheless received payment of wages from multiple Corporate Defendants. *See* **Exhibit F**.

17. All the Restaurants are properly identified in this Complaint through the relevant Corporate Defendant. Because all of the Restaurants share identical illegal wage and hour policies, the Restaurants (and the relevant Corporate Defendants) are properly named because of outstanding liability to the Class Members for whom Plaintiff seeks to represent.

18. At all relevant times, Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA and the NYLL.

19. At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants. Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

20. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including Servers, Waiters, Porters, Bussers, Bartenders, Food Runners, Barbacks, Cashiers, Line Cooks, Hostesses, and Dishwashers, among others), employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

21. At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them proper wages, including minimum and overtime wages. The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs.

22. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## CLASS ACTION ALLEGATIONS

23. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including Servers, Waiters, Porters, Bussers, Bartenders, Food Runners, Barbacks, Cashiers, Line Cooks, Hostesses, and Dishwashers, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case (the "Class" or "Class Members").

24. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and the rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

25. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts upon which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

26. Plaintiff's claims are typical of those claims which could be alleged by any member of the Class and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants, as alleged herein, of (1) failing to pay minimum wages, (2) failing to pay overtime premiums, (3) failing to pay spread-of-hours premiums, (4) failing to pay wages for all hours worked, (5) failing to timely pay wages, and (6) failing to provide proper wage and hour statements, per requirements of the New York Labor Law. Defendants' policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

27. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

28. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual Class Members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

29. Defendants and other employers throughout the state violate New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

30. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

a. Whether Defendants employed Plaintiff and the Class Members within the meaning of the NYLL;

b. What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class Members properly;

c. At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class Members for their work;

d. Whether Defendants properly notified Plaintiff and Class Members of their hourly rates and overtime rates;

e. Whether Defendants paid Plaintiff and Class Members the proper minimum wage pursuant to the NYLL;

f. Whether Defendants paid Plaintiff and Class Members their proper overtime rates of one-and-a-half times their regular rate for hours worked over forty in a given week;

g. Whether Defendants paid Plaintiff and Class Members spread-of-hours premiums for days worked longer than ten hours;

h. Whether Defendants properly notified Plaintiff and Class Members of their regular hourly rate and overtime rate;

i. Whether Defendants properly compensated Plaintiff and Class Members for all hours worked;

j. Whether Defendants timely compensated Plaintiff and Class Members for their wages under the NYLL;

k. Whether Defendants breached their contracts with Plaintiff and Class Members and unjustly enriched themselves;

l. Whether Defendants provided proper wage statements as required under the NYLL; and,

m. Whether Defendants provided proper wage notice, at date of hiring and annually thereafter, to all non-exempt employees per requirements of the NYLL.

## STATEMENT OF FACTS

*Plaintiff's Employment Background*

31. In or around June 2017, Plaintiff was hired by Defendants to work as a cook at Defendants' Restaurants, including American Beauty Bistro, American Beauty in the Park, and American Beauty Bar & Grill. Plaintiff's employment was terminated by Defendants in or around September 2024.

32. Although Defendants gave Plaintiff the title "Kitchen Manager," Plaintiff's primary duty was cooking. Apart from cooking, Plaintiff's only responsibility was ordering inventory for the kitchen. Plaintiff did not exercise any managerial authority over Defendants'

employees. Plaintiff did not have the authority to hire or fire employees, set employee schedules, approve requests for days off, approve employee raises, or handle payroll.

33. Throughout his employment, Plaintiff was scheduled to work seven (7) days per week from approximately 10:00 AM to 11:00 PM for a total of ninety-one (91) hours per week. On rare occasions, Plaintiff would take one (1) day off. At all relevant times, Defendants scheduled FLSA Collective Plaintiffs and Class Members to work similar hours.

34. Throughout his employment, Plaintiff was scheduled to be paid at $25.00 per hour. At all relevant times, Defendants paid FLSA Collective Plaintiffs and Class Members at similar rates.

35. Plaintiff was not paid for the last one (1) week of his employment.

*Plaintiff's Claims of Minimum Wages*

36. As alleged above, Plaintiff was scheduled to be paid at a rate of $25.00 per hour. However, Defendants failed to compensate Plaintiff for all hours worked. Some of Plaintiff's wage statements report only ten (10) or twenty (20) hours worked, despite Plaintiff having worked substantially more hours in those weeks. For the workweek of July 24 through July 30, 2023, for example, Plaintiff worked approximately ninety-one (91) hours but received only $500.00 in wages for that week. As a result, Plaintiff was compensated at a sub-minimum wage rate, in violation of the FLSA and NYLL.

37. At all relevant times, Defendants subjected to FLSA Collective Plaintiffs and Class Members to similar policies of failing to pay them minimum wages, in violation of the FLSA and NYLL.

*Plaintiff's Claims of Overtime Premiums*

38. Throughout Plaintiff's employment, Defendants regularly scheduled Plaintiff to work 91 hours per week, seven days per week. However, Defendants failed to compensate him for hours worked over 40 hours per workweek. As alleged above, Plaintiff was regularly required by Defendants to work his scheduled shifts across multiple Defendants' Restaurants. Rather than paying Plaintiff for all of his hours through a single payroll, Defendants issued Plaintiff separate paychecks from each of the Corporate Defendants for the same workweek, each reflecting only a portion of the hours Plaintiff actually worked so that no single paycheck reflected more than forty (40) hours of work, thereby avoiding paying Plaintiff his overtime wages.

39. At all relevant times, Defendants failed to compensate overtime premiums to Plaintiff, FLSA Collective Plaintiffs, and Class Members for all hours they worked over 40 hours per workweek, in violation of the FLSA and NYLL.

*Plaintiff's Claims of Spread-of-Hours Premiums*

40. During his employment by Defendants, Plaintiff was requested to work shifts that exceeded ten (10) hours in duration. However, he never received the corresponding spread of hours premium for working such shifts, as required under NYLL. Similarly, Class Members regularly worked shifts exceeding ten (10) hours in duration and were never paid spread of hours premium.

*Plaintiff's Claims of Late Payment of Wages*

41. On a regular basis, Defendants also failed to timely pay Plaintiff. Plaintiff regularly did not receive their wages within seven (7) days of the end of the week in which Plaintiffs earned them, with delays ranging from one (1) to thirty (30) days, in violation of

NYLL § 191(1)(a)(i). Similarly, Defendants subjected Class Members to the same unlawful practice of untimely payment of wages.

*Fraudulent Filing, Breach of Contract and Unjust Enrichment Claims*

42. From in or around June 2017 through in or around March 2023, Plaintiff was paid entirely in cash. As a result, Defendants failed to provide Plaintiff and Class Members with accurate IRS Forms W-2 for all the tax years of their employment and failed to properly record, account for, and report to the IRS all monies paid to Plaintiff and Class Members. In failing to account for these monies in their IRS filings, Defendants filed fraudulent information in violation of 26 U.S.C. § 7434. Under 26 U.S.C. § 7434(b), Defendants are liable for at least five thousand dollars to Plaintiff and Class Members for each fraudulent filing, which would have to be at least once a year.

43. In addition, when Defendants hired Plaintiff and Class Members, the parties entered into a contract. The covenant of good faith and fair dealing is implicit in every contract under New York law.

44. In violating the Internal Revenue Code by failing to provide proper W-2 forms, Defendants also breached their contract with Plaintiff and Class Members to pay the employer's share of Social Security and Medicare taxes for each employee.

45. Defendants also unjustly enriched themselves at the expense of Plaintiff, FLSA Collective Plaintiffs and Class Members by retaining monies that should have been remitted to the IRS on behalf of Plaintiff and Class Members.

46. As a result, Plaintiff and Class Members will either (1) be liable to the IRS for the employer's share of FICA taxes or (2) upon retirement, suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

47. The employer's share of Social Security taxes is 6.2%. The employer's share of Medicare taxes is 1.45%. Accordingly, Defendants must compensate Plaintiff and Class Members 7.65% of all their earnings from Defendants beginning six years prior to the filing of this Complaint.

48. Defendants are liable to Plaintiff and Class Members for failing to pay FICA taxes for the wages earned by Plaintiff, FLSA Collective Plaintiffs and Class Members.

*WTPA Violations*

49. At all relevant times, Defendants failed to provide proper wage notices and accurate wage statements to Plaintiff and Class Members, in violation of the Wage Theft Protection Act ("WTPA")—incorporated into the NYLL.

50. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024), courts have generally held that there is no categorical bar on Article III standing for WTPA claims. Instead, the Second Circuit found that "[t]he lack of such notices and statements might impair 'an employee's ability to seek relief for violations they may not have information about'" to an extent sufficient to support standing.

51. New York courts continue to find sufficient standing to support standing to support these claims. One such court stated the following at Summary Judgment:

> "Here, the Court determines that Plaintiffs have adequately alleged and established actual and concrete downstream harm as a result of Defendants' failure to provide the required wage and hour notices and wage statements. Plaintiffs have shown that "Defendants' violations impaired their ability to seek relief due to a lack of information." More than that, Plaintiffs have proved, and the Court agrees, that Defendants' failure to maintain proper wage statements because of their automatic meal-break deduction and eight-hour rounding led

> Plaintiffs to lose wages. These are exactly the types of harm that the Second Circuit considered to be sufficient to establish standing in *Guthrie*. Therefore, the Court finds for Plaintiffs on this issue."

*Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, at *61 (S.D.N.Y. February 23, 2026) (internal citations omitted).

52. Here, Defendants' conduct has led to exactly the kind of injury contemplated in *Guthrie* and *Sanchez.* By failing to inform Plaintiff and Class Members of the actual hours that they worked by not providing them with wage statements, Defendants were able to hide their wrongdoing, as Plaintiff and Class Members were unaware of the fact that they were being underpaid. Had Defendants provided proper wage statements to Plaintiff and Class Members which accurately listed the total number of hours Plaintiff and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked.

53. By failing to report all of Plaintiff's and Class Members' hours, Defendants were able to reduce the employee earnings that they later reported to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. The effect of reporting reduced wages on an employee's W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. As a result, Plaintiff and Class Members were irreversibly injured with respect to their Social Security benefits—a fact which Defendants were able to hide from them by failing to provide them with proper wage statements.

54. Furthermore, Defendants failed to provide any wage notices to Plaintiff or Class Members. Once again, had Defendants provided Plaintiff and Class Members with wage notices that communicated the rates that Defendants actually intended to pay them, Plaintiff and Class Members would have been able to contest the unfair pay rates or choose not to take a job with Defendants. Instead, due to Defendants' intentional hiding of that information, Plaintiff and Class Members accepted their employments with Defendants without the knowledge that Defendants did not intend to be bound to their promised pay rates.

55. Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

56. Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs and Class Members the proper minimum wages and overtime wages at a rate that is at least one and one-half times the regular rate of pay for hours worked in excess of forty (40) per workweek, in violation of the FLSA and NYLL.

57. Defendants knowingly and willfully operated their business with a policy of failing to compensate Plaintiff and Class Members spread-of-hours premiums, in violation of the NYLL.

58. Defendants knowingly and willingly failed to compensate Plaintiff, FLSA Collective Plaintiffs, and Class Members for work undertaken during the last week of their employment.

59. Defendants knowingly and willingly failed to compensate Plaintiff within seven (7) days of the end of their workweek, as required by NYLL 191(1)(a).

60. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members, in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIMS

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT

61. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

62. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

63. At all relevant times, Plaintiff and FLSA Collective Plaintiffs were covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

64. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

65. At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

66. At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their minimum wages and overtime premiums for all hours worked over 40 hours per workweek.

67. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these

records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

68. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, when Defendants knew or should have known such was due.

69. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

70. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

71. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff suffered damages in an amount not presently ascertainable of unpaid overtime wages, unpaid minimum wages, and equal amounts as liquidated damages.

72. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II
## VIOLATION OF THE NEW YORK LABOR LAW

73. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

74. At all relevant times, Plaintiff and Class Members were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

75. Defendants willfully violated Plaintiff's and Class Members' rights by subjecting them to a policy of failing to pay them minimum wages and overtime premiums.

76. Defendants willfully violated Plaintiff's and Class Members' rights by subjecting them to a policy of failing to pay them spread-of-hours premiums for shifts worked with a spread of more than ten hours.

77. Defendants had a policy and practice of failing to pay Plaintiff and Class Members the full amount of wages due.

78. Defendants willfully violated Plaintiff's and Class Members' rights by subjecting them to a policy of failing timely pay wages.

79. Defendants failed to properly notify Plaintiff and Class Members of their hourly pay rate and overtime rate, in direct violation of the NYLL.

80. Defendants failed to provide Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the NYLL.

81. Defendants failed to provide Plaintiff and Class Members with proper wage statements with every payment as required by NYLL.

82. Due to the Defendants' New York Labor Law violations, Plaintiff and Class Members are entitled to recover from Defendants their (i) unpaid minimum wages, (ii) unpaid overtime premiums, (iii) unpaid wages for all hours worked, (iv) unpaid spread of hours premiums, (v) liquidated damages, (vi) statutory penalties, (vii) reasonable attorney's fees, and (viii) costs and disbursements of this action, pursuant to New York Labor Law.

## COUNT III
## CIVIL DAMAGES FOR FRAUDULENT FILING OF INFORMATION RETURNS UNDER 26 U.S.C. § 7434(a)

83. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

84. Under the Internal Revenue Code, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a).

85. By failing to provide Plaintiff and Class Members with accurate IRS Forms W-2 for all of the tax years during which they were employed by Defendants and failing to properly record, account for, and report to the IRS all monies paid to Plaintiff and the Class as wages, Defendants filed fraudulent information returns with the IRS, in violation of 26 U.S.C. § 7434. Defendants knew they had a legal duty not to misrepresent to the IRS the amount of money they were paying employees. Defendants' actions were willful violations of, or showed reckless disregard for, the provisions of the Internal Revenue Code.

86. Pursuant to 26 U.S.C. § 7434(b)(3), Defendants are also liable to Plaintiff for reasonable attorneys' fees.

**COUNT IV**
**BREACH OF CONTRACT**
**(Implied Covenant of Good Faith and Fair Dealing)**

87. Plaintiff realleges and incorporates all the foregoing paragraphs of this Class Action Complaint as if fully set forth herein.

88. "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance … This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract … [T]he duties of good faith and fair dealing … encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were

included [in the contract].” *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002).

89. When Plaintiff and Class Members accepted offers of employment form Defendants, the parties entered a contract, and the covenant of good faith and fair dealing implicit therein required Defendants to pay Plaintiff and Class Members in accordance with all applicable laws. This involved, inter alia, a duty by abide by the Internal Revenue Code and pay all required FICA taxes.

90. Defendants breached this duty when they decided to pay Plaintiff and Class Members in cash and not file proper W-2. As a result, Plaintiffs and Class members lost part of the benefit of the bargain for which they contracted, suffering a loss in the amount of the FICA taxes that Defendants should have paid on their behalf but did not.

## COUNT V
## UNJUST ENRICHMENT

91. Plaintiff realleges and incorporates all the foregoing paragraphs of this Class Action Complaint as if fully set forth herein.

92. To state a claim for unjust enrichment, a plaintiff must allege that: “(1) the [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good conscience to permit the [defendant] to retain what is sought to be recovered.” *Georgia Malone & Co., Inc. v Rieder*, 19 NY3d 511, 516 (2012) (internal quotations omitted).

93. Defendants were unjustly enriched when they kept for themselves money that should have been paid to the Internal Revenue Service as Defendants’ employer FICA contribution. Such came at the expense of Plaintiff and Class Members because they will either (1) be liable to

the IRS for the employer's share of (2) upon retirement suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

94. Accordingly, all sums that Defendants should have paid to the IRS should be disgorged from Defendants and transferred to Plaintiff and Class Members.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and FLSA Collective Plaintiffs and Class members, respectfully requests that this Court grant the following relief:

a) A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

b) A declaratory judgment that the practices complained of herein are unlawful under 26 U.S.C. § 7434 and that Defendants breached their contract with, and/or unjustly enriched themselves at the expense of, Plaintiff and Class Members;

c) An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

d) An award of unpaid wages, including minimum and overtime wages, due under the FLSA and NYLL;

e) An award of unpaid spread of hours premium under the NYLL;

f) An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages for all hours worked pursuant to FLSA and NYLL;

g) An award of liquidated damages, interest, and legal fees as a result of Defendants' willful failure to pay Plaintiff and Class Members timely on a weekly basis as required under NYLL;

h) An award of liquidated damages, interest, and legal fees as result of Defendants' willful failure to pay Plaintiff, FLSA Collective Plaintiffs and Class Members for all the weeks they worked throughout their employment;

i) Contractual damages for Defendants' failure to keep their promise to abide by the Internal Revenue Code and fund Plaintiff's and Class Members' retirement through FICA contributions;

j) Disgorgement from Defendants of all illegally retained sums that should have gone towards Plaintiff's and Class Members' FICA contributions;

k) An award of statutory penalties as a result of Defendants' failure to comply NYLL wage notice and wage statement requirements;

l) An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

m) Designation of Plaintiff as Representatives of the FLSA Collective Plaintiffs;

n) Designation of this action as a Class Action pursuant to FRCP 23;

o) Designation of Plaintiff as Representative of the Class; and

p) Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands trial by jury on all causes of action and issues so triable as of right by jury.

Date: November 17, 2026
New York, New York

Respectfully submitted,

By: */s/ C.K. Lee*

C.K. Lee, Esq.
**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 W. 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Email: cklee@leelitigation.com
*Attorneys for Plaintiff, FLSA Collective Plaintiff and the Class*